FILED
CLERK, U.S. DISTRICT COURT

AUG 23 2019

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1  NICOLA T. HANNA
   United States Attorney
2  BRANDON D. FOX
   Assistant United States Attorney
3  Chief, Criminal Division
   PUNEET V. KAKKAR (Cal. Bar No. 259816)
4  Assistant United States Attorney
   Deputy Chief, International Narcotics,
5    Money Laundering, and Racketeering Section
       1400 United States Courthouse
6      312 North Spring Street
       Los Angeles, California 90012
7      Telephone: (213) 894-5728
       Facsimile: (213) 894-0142
8      E-mail:   puneet.kakkar@usdoj.gov

9  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

10

11                    UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  UNITED STATES OF AMERICA,          No. CR 19-

14          Plaintiff,                 PLEA AGREEMENT FOR DEFENDANT
                                       KUNAL KALRA
15          v.

16  KUNAL KALRA,
      aka "Kumar,"
17      "shecklemayne," and
        "coinman,"
18
            Defendant.
19

20      1.    This constitutes the plea agreement between KUNAL KALRA

21  also known as ("aka") "Kumar," aka "shecklemayne" aka "coinman"

22  ("defendant") and the United States Attorney's Office for the Central

23  District of California (the "USAO") in the above-captioned case.

24  This agreement is limited to the USAO and cannot bind any other

25  federal, state, local, or foreign prosecuting, enforcement,

26  administrative, or regulatory authorities.

27                      DEFENDANT'S OBLIGATIONS

28      2.    Defendant agrees to:

1    a.    Give up the right to indictment by a grand jury and,
2  at the earliest opportunity requested by the USAO and provided by the
3  Court, appear and plead guilty to a four-count information in the
4  form attached to this agreement as Exhibit A or a substantially
5  similar form, which charges defendant with distribution of
6  methamphetamine, in violation of 21 U.S.C. § 841(a)(1),
7  (b)(1)(A)(viii); operating an unlicensed money transmitting business
8  in violation of 18 U.S.C. § 1960; laundering of monetary instruments,
9  in violation of 18 U.S.C. § 1956(a)(3)(B); and failure to maintain an
10  effective anti-money laundering program in violation of 31 U.S.C.
11  §§ 5318(h), 5322(b).

12    b.    Give up the right to indictment by a grand jury and,
13  at the earliest opportunity requested by the USAO and provided by the
14  Court, appear in the Central District of California and plead guilty
15  to an information filed in the Western District of Texas, pursuant to
16  a plea agreement between defendant and the United States Attorney's
17  Office for the Western District of Texas, attached hereto as Exhibit
18  B (the "Western District of Texas Action").

19    c.    Not contest facts agreed to in this agreement.

20    d.    Abide by all agreements regarding sentencing contained
21  in this agreement.

22    e.    Appear for all court appearances, surrender as ordered
23  for service of sentence, obey all conditions of any bond, and obey
24  any other ongoing court order in this matter.

25    f.    Not commit any crime; however, offenses that would be
26  excluded for sentencing purposes under United States Sentencing
27  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
28  within the scope of this agreement.

2

1          g.    Be truthful at all times with the United States
2  Probation and Pretrial Services Office and the Court.

3          h.    Pay the applicable special assessments at or before
4  the time of sentencing unless defendant lacks the ability to pay and
5  prior to sentencing submits a completed financial statement on a form
6  to be provided by the USAO.

7          h.    Agree to and not oppose the imposition of the
8  following conditions of probation or supervised release:

9            i.    Defendant consents to search at any time of the
10  day or night, with or without a search warrant, warrant of arrest,
11  probable cause, or reasonable suspicion by any probation officer or
12  law enforcement officer -- and waives any right to object to any
13  search and seizure -- of any Digital Device or Internet Account used
14  by defendant.

15            ii.    Defendant shall maintain one personal checking
16  account.  All of defendant's income, "monetary gains," or other
17  pecuniary proceeds shall be deposited into this account, which shall
18  be used for payment of all personal expenses.  Records of all other
19  bank accounts, including any business accounts, shall be disclosed to
20  the Probation Officer upon request.

21           iii. As directed by the Probation Officer, defendant
22  shall provide to the Probation Officer: (1) a signed release
23  authorizing credit report inquiries; (2) federal and state income tax
24  returns and a signed release authorizing their disclosure and (3) an
25  accurate financial statement, with supporting documentation as to all
26  assets, income, expenses, and liabilities of defendant.

27           iv.    Defendant shall truthfully and timely file and
28  pay taxes owed for the years of conviction, and shall truthfully and

1  timely file and pay taxes during the period of community supervision.
2  Further, defendant shall show proof to the Probation Officer of
3  compliance with this order.

4          v.    Defendant shall apply all monies received from
5  income tax refunds to the outstanding Court-ordered financial
6  obligation.  In addition, defendant shall apply all monies received
7  from lottery winnings, inheritance, judgments, and any anticipated or
8  unexpected financial gains to the outstanding Court-ordered financial
9  obligation.

10     3.  Defendant further agrees:

11         a.    Truthfully to disclose to law enforcement officials,
12  at a date and time to be set by the USAO, the location of,
13  defendant's ownership interest in, and all other information known to
14  defendant about, all monies, properties, and/or assets of any kind,
15  derived from or acquired as a result of, or used to facilitate the
16  commission of, defendant's illegal activities, and to forfeit all
17  right, title, and interest in and to such items, specifically
18  including all right, title, and interest in and to all the following,
19  which defendant admits constitute the proceeds of defendant's illegal
20  activities, used to facilitate defendant's criminal activities,
21  and/or represents property involved in defendant's criminal
22  activities in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), 18
23  U.S.C. § 1956(a):

24         i.    $130,663.17 in a Wells Fargo Bank Account (ending
25  in 7790), seized on or about October 12, 2017;

26         ii.   Approximately 54.30542584 Bitcoin seized on or
27  about October 12, 2017 from defendant;

28

                                    4

1             iii. $449,600 in U.S. currency seized on or about

2 October 12, 2017;

3             iv. $4,858.00 in U.S. currency seized on or about

4 October 12, 2017 from defendant's vehicle;

5             v. $25,000 in U.S. currency seized on or about

6 October 12, 2017;

7             vi. $91,433.90 in an Ally Financial Inc. Savings

8 Account (ending in 1642);

9             vii. $145,000 in a Gemini Trust Company LLC Savings

10 Account (ending in 7392);

11             viii.     The following cryptocurrencies held in a

12 wallet hosted by Bittrex, seized on October 12, 2017:

13                     (I)    108.61000000 XMR

14                     (II) 164.47222863 NEO

15                     (III)     439.43014502 OMG

16                     (IV) 119.07556772 MCO

17                     (V)    849.29757344 CVC

18                     (VI) 434.1819644 TKN

19           ix.   13.84224814 Bitcoin held in a Bitgo wallet as of

20 October 12, 2017;

21           x.   3.57327127 BTC, seized on or about October 12,

22 2017;

23           xi. $42,332.00 in U.S. currency seized on or about

24 October 12, 2017.

25      b.   To the Court's entry of an order of forfeiture at or

26 before sentencing with respect to these assets and to the forfeiture

27 of the assets.

28

c.    To take whatever steps are necessary to pass to the United States clear title to the assets described above, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.    Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against these properties pursuant to 21 U.S.C. § 881.  With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment.  Defendant acknowledges that forfeiture of the assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

e.    Not to assist any other individual in any effort falsely to contest the forfeiture of the assets described above.

f.    Not to claim that reasonable cause to seize the assets was lacking.

g.    To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.    To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

6

1         i.    That forfeiture of assets described above shall not be

2    counted toward satisfaction of any special assessment, fine,

3    restitution, costs, or other penalty the Court may impose.

THE USAO'S OBLIGATIONS

5        4.    The USAO agrees to:

6            a.    Not contest facts agreed to in this agreement.

7            b.    Abide by all agreements regarding sentencing contained

8    in this agreement.

9            c.    At the time of sentencing, provided that defendant

10   demonstrates an acceptance of responsibility for the offenses up to

11   and including the time of sentencing, recommend a two-level reduction

12   in the applicable Sentencing Guidelines offense level, pursuant to

13   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

14   additional one-level reduction if available under that section.

15           d.    Recommend that the sentence imposed with respect to

16   the Western District of Texas Action run concurrently with the

17   sentence imposed in this action.

NATURE OF THE OFFENSES

19       5.    Defendant understands that for defendant to be guilty of

20   the crime charged in count one, that is, distribution of

21   methamphetamine, in violation of Title 21, United States Code,

22   Section 841(a)(1), (b)(1)(A)(viii), the following must be true: (1)

23   defendant knowingly distributed methamphetamine; and (2) defendant

24   knew that it was methamphetamine or some other federally controlled

25   substance.

26       6.    Defendant understands that for defendant to be guilty of

27   the crime charged in count two, that is, operating an unlicensed

28   money transmitting business in violation of Title 18, United States

7

1 Code, Section 1960, the following must be true: (1) defendant
2 knowingly conducted, controlled, managed, supervised, directed, or
3 owned a business; (2) the business was a money transmitting business;
4 and (3) that business was unlicensed, that is, a business which
5 affects interstate or foreign commerce and fails to comply with the
6 registration requirements of 31 U.S.C. § 5330 and the regulations
7 prescribed thereunder.

8     7.   Defendant also understands that for defendant to be guilty
9 of the crime charged in count three, that is, money laundering, in
10 violation of Title 18, United States Code, Section 1956(a)(3)(B), the
11 following must be true: (1) defendant conducted a financial
12 transaction that affected interstate or foreign commerce in any way
13 or degree; (2) the transaction involved property represented by a law
14 enforcement officer, and believed by the defendant, to be the
15 proceeds of some form of unlawful activity; and (3) defendant acted
16 with the intent to conceal or disguise the nature, location, source,
17 ownership, or control of the property.

18     8.   Defendant understands that for defendant to be guilty of
19 the crime charged in count four, that is, failure to maintain an
20 effective anti-money laundering program, in violation of Title 31,
21 United States Code, Sections 5318(h), 5322, the following must be
22 true: (1) defendant was a money services business located in the
23 United States operating as an exchanger of convertible virtual
24 currency; (2) defendant failed to implement one or more of the
25 following minimal requirements set forth by regulation by the
26 Secretary of the Treasury: (i) policies, procedures, and internal
27 controls regarding verifying customer identification, filing reports
28 required for money services businesses, creating and retaining

8

1   records; (ii) the designation of a person to assure day to day
2   compliance with anti-money laundering controls, including assuring
3   that the money services business properly files reports as required
4   by law and providing appropriate training and education; (iii)
5   providing education of appropriate personnel concerning
6   responsibilities under anti-money laundering program; or
7   (iv) providing for independent review to monitor and maintain an
8   adequate anti-money laundering program; and (3) defendant acted
9   willfully in failing to develop, implement, and maintain an effective
10  anti-money laundering program.

11      9.   Defendant understands that for defendant to be subject to
12  the statutory maximum and statutory minimum sentence set forth below
13  as to count one, the government must prove beyond a reasonable doubt
14  that defendant distributed at least 50 grams of methamphetamine
15  Defendant admits that defendant, in fact, distributed at least 50
16  grams of methamphetamine.

17                              PENALTIES

18      10.  Defendant understands that the statutory maximum sentence
19  that the Court can impose for count one, a violation of Title 21,
20  United States Code, Section 841(a)(1), (b)(1)(A)(viii) is: life
21  imprisonment; a lifetime period of supervised release; a fine of
22  $10,000,000 or twice the gross gain or gross loss resulting from the
23  offense, whichever is greatest; and a mandatory special assessment of
24  $100.

25      11.  Defendant understands that, absent a determination by the
26  Court that defendant's case satisfies the criteria set forth in 18
27  U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, the statutory mandatory
28  minimum sentence that the Court must impose for count one, a

1  violation of Title 21, United States Code, Section 841(a)(1),

2  (b)(1)(A)(viii) is: 10 years' imprisonment, followed by a 5-year

3  period of supervised release, and a mandatory special assessment of

4  $100.

5       12.   Defendant understands that the statutory maximum sentence

6  that the Court can impose for count two, a violation of Title 18,

7  United States Code, Section 1960 is:  5 years imprisonment; a 3-year

8  period of supervised release; a fine of $250,000 or twice the gross

9  gain or gross loss resulting from the offense, whichever is greatest;

10  and a mandatory special assessment of $100.

11       13.   Defendant understands that the statutory maximum sentence

12  that the Court can impose for count three, a violation of Title 18,

13  United States Code, Section 1956(a)(3)(B), is: 20 years imprisonment;

14  years imprisonment; a 3-year period of supervised release; a fine of

15  $250,000 or twice the gross gain or gross loss resulting from the

16  offense, whichever is greatest; and a mandatory special assessment of

17  $100.

18       14.   Defendant understands that the statutory maximum sentence

19  that the Court can impose for count four, a violation of Title 31,

20  United States Code, Sections 5318(h), 5322:  5 years imprisonment; a

21  3-year period of supervised release; a fine of $250,000 or twice the

22  gross gain or gross loss resulting from the offense, whichever is

23  greatest; and a mandatory special assessment of $100.

24       15.   Defendant understands, therefore, that the total maximum

25  sentence for all offenses to which defendant is pleading guilty is:

26  lifetime imprisonment; lifetime supervised release; a fine of

27  $10,750,000 or twice the gross gain or gross loss resulting from the

28

1 offenses, whichever is greatest; and a mandatory special assessment
2 of $400.

3    16.  Defendant understands that supervised release is a period
4 of time following imprisonment during which defendant will be subject
5 to various restrictions and requirements.  Defendant understands that
6 if defendant violates one or more of the conditions of any supervised
7 release imposed, defendant may be returned to prison for all or part
8 of the term of supervised release authorized by statute for the
9 offense that resulted in the term of supervised release.

10    17.  Defendant understands that under 21 U.S.C. § 862a,
11 defendant will not be eligible for assistance under state programs
12 funded under the Social Security Act or Federal Food Stamp Act or for
13 federal food stamp program benefits, and that any such benefits or
14 assistance received by defendant's family members will be reduced to
15 reflect defendant's ineligibility.

16    18.  Defendant understands that, by pleading guilty, defendant
17 may be giving up valuable government benefits and valuable civic
18 rights, such as the right to vote, the right to possess a firearm,
19 the right to hold office, and the right to serve on a jury.
20 Defendant understands that once the court accepts defendant's guilty
21 plea, it will be a federal felony for defendant to possess a firearm
22 or ammunition.  Defendant understands that the conviction in this
23 case may also subject defendant to various other collateral
24 consequences, including but not limited to revocation of probation,
25 parole, or supervised release in another case and suspension or
26 revocation of a professional license.  Defendant understands that
27 unanticipated collateral consequences will not serve as grounds to
28 withdraw defendant's guilty plea.

1    19.   Defendant understands that, if defendant is not a United
2   States citizen, the felony conviction in this case may subject
3   defendant to: removal, also known as deportation, which may, under
4   some circumstances, be mandatory; denial of citizenship; and denial
5   of admission to the United States in the future.   The court cannot,
6   and defendant's attorney also may not be able to, advise defendant
7   fully regarding the immigration consequences of the felony conviction
8   in this case.   Defendant understands that unexpected immigration
9   consequences will not serve as grounds to withdraw defendant's guilty
10  plea.

11                                FACTUAL BASIS

12    20.   Defendant admits that defendant is, in fact, guilty of the
13  offenses to which defendant is agreeing to plead guilty.   Defendant
14  and the USAO agree to the statement of facts provided below and agree
15  that this statement of facts is sufficient to support pleas of guilty
16  to the charges described in this agreement and to establish the
17  Sentencing Guidelines factors set forth in paragraph 22 below but is
18  not meant to be a complete recitation of all facts relevant to the
19  underlying criminal conduct or all facts known to either party that
20  relate to that conduct.

21  **Unlicensed Money Transmission & Operation of Kiosk**

22    Beginning in or about May 2015, through October 12, 2017,
23  defendant Kunal Kalra, also known as "kumar," "shecklemayne," and
24  "coinman," knowingly operated, owned, and conducted a digital (or
25  virtual) currency exchange business, for which he exchanged fiat
26  currency, such as United States dollars, for Bitcoin, and vice versa.
27  Defendant did business under monikers including "shecklemayne" and
28  "coinman" and advertised his services on platforms such as

                                12

localbitcoins.com.   Defendant charged commissions for exchanging fiat currency for virtual currency, and only dealt with high-volume customers who were willing to exchange at least $5,000 per transaction.   Defendant communicated with customers using encrypted messaging applications such as "Wickr."   Defendant's virtual currency exchange business was a money transmitting business, affected interstate commerce, and failed to comply with the registration requirements of 31 U.S.C. § 5330 and the regulations prescribed thereunder.   In the course of his business, defendant exchanged virtual currency for cash for those who received virtual currency from selling drugs on the darknet and other actors who engaged in illegal criminal activities.   Defendant knew that he was providing exchange services for individuals engaged in such criminal activities, including drug dealing.

Defendant sustained and operated his unregistered business by establishing bank accounts in the names of others, including fake businesses.   These bank accounts in fake names allowed defendant to maintain accounts with those banks (as it hid the illicit business in which he was engaged) and to continue to operate a high-volume, long-term unlicensed cryptocurrency-fiat currency exchange business.

As part of his unlicensed money transmission business, defendant operated a kiosk (colloquially known as an "ATM") by which customers could exchange Bitcoin for cash and vice versa.   Defendant operated and controlled the funds that allowed customers to exchange fiat currency for virtual currency using this kiosk.   Defendant also profited from each and every transaction conducted on the kiosk.   A customer who sought to do an exchange using the kiosk did not need to reveal or provide their identity in order to conduct an exchange at

1  the kiosk, and defendant did not install a camera or implement any
2  other feature that would have required a customer to identify
3  him/herself.

4      Defendant admits that in the course of his unlicensed money
5  transmitting business, he exchanged, in total, no more than
6  $25,000,000.

7      **Laundering of Proceeds Represented to be Unlawful with**
8      **Undercover Agents**

9      In the course of operating his unregistered exchange business,
10  defendant engaged in transactions with two separate undercover
11  agents, one with the Drug Enforcement Administration ("DEA-UC") and
12  one with Homeland Security Investigations ("HSI-UC"), believing that
13  the transactions involved unlawful proceeds.  Defendant conducted
14  transactions with these undercover agents, as described below, and
15  never asked for their identification.

16      On May 15, 2017, defendant met with the DEA-UC.  Defendant and
17  the DEA-UC coordinated the logistics of this meeting by communicating
18  on Wickr.  The defendant met the DEA-UC at a Starbucks in Los
19  Angeles, California.  Prior to meeting in person, defendant agreed
20  that he would exchange approximately $50,000 cash for 28.27 Bitcoin.
21  At the meeting in Starbucks, defendant brought U.S. currency in a
22  black plastic bag, specifically, five bundles of $10,000.  The DEA-UC
23  sent defendant Bitcoin, and defendant provided cash to the DEA-UC.
24  Defendant charged the DEA-UC a five percent commission for this
25  transaction.  During this meeting, after the parties exchanged
26  virtual currency for cash, defendant informed the DEA-UC that he had
27  a Bitcoin "ATM" where people could buy or sell up to $10,000 per
28  transaction or conduct repeat transactions of $10,000, up to $20,000

to $30,000 per day, and earned six percent per transaction from the kiosk. The DEA-UC also discussed the prices of drugs, conveying that he was a drug dealer (dealing with cocaine) and sent drugs to Australia. Defendant informed the DEA-UC that he was "pressing pills" (that is, manufacturing illegal controlled substances) and could produce 60,000 units an hour.

On June 22, 2017, defendant met again with the DEA-UC. Prior to this meeting, the DEA-UC informed defendant that he needed to exchange $100,000 worth in Bitcoin for U.S. currency. Defendant met with the DEA-UC at a Starbucks in Los Angeles, California. The DEA-UC informed defendant that he had just returned from Australia. Defendant told the DEA-UC about his affiliate, who was selling methamphetamine, from Japan, and had used defendant's services to exchange virtual currency for currency. The DEA-UC then provided Bitcoin in exchange for cash, specifically, $98,782. During this meeting, defendant discussed ways to hide money through the use of virtual currency. Defendant asked the DEA-UC if the DEA-UC wanted any samples of methamphetamine.

On August 9, 2017, defendant met again with the DEA-UC. The two had agreed prior to the meeting for the DEA-UC to exchange approximately $107,000 in Bitcoin for cash. The two met at a Starbucks in Los Angeles, California, and discussed law enforcement activity in curbing darknet transactions and shutting down marketplaces, over which sales of drugs occur. The two then conducted the transaction.

On October 12, 2017, defendant met with the DEA-UC and agreed to exchange approximately $100,000 in cash for Bitcoin for the DEA-UC. The two met at a Starbucks in Los Angeles, California and conducted

15

the exchange.   After this exchange, the DEA-UC informed defendant that he had over 2,000 Bitcoin from Australia (referring to his drug business) and proposed a subsequent transaction.

In total, including the amount described below, defendant admits that he exchanged approximately $400,000 in Bitcoin (represented to be the proceeds of drug trafficking) for cash.

### Sale of Methamphetamine and Related Laundering

On June 1, 2017, defendant met with the HSI-UCA, who was introduced to defendant via a confidential source ("CS").   The CS had arranged a meeting with defendant to purchase approximately two pounds of methamphetamine from defendant.   Defendant provided 881.8 grams of methamphetamine to the HSI-UCA in exchange for $6,000. Defendant informed the HSI-UCA that he had other methamphetamine to sell.

On June 21, 2017, the HSI-UCA met with defendant to exchange Bitcoin (represented to be proceeds of the methamphetamine purchased from defendant and then subsequently sold) for cash.   The two met at a Starbucks in Signal Hill, California, and then proceeded to conduct a transaction in a car owned by defendant.   In the car, the HSI-UCA told defendant that he had profited from the sale of the methamphetamine (purchased from defendant) from Japan.   The HSI-UCA sought to exchange approximately $50,000 in Bitcoin for cash. Defendant agreed to pay the HSI-UCA $47,000 in cash and agreed to pay the remainder in a wire-to-wire transaction between bank accounts.

### Failure to Implement Anti-Money Laundering Program

During the time defendant operated an unregistered money services business, defendant failed to implement the required anti-money laundering program.   Defendant knew that the Bank Secrecy Act

16

required exchangers of virtual currency, such as himself, to develop, implement, and maintain an effective anti-money laundering program. For example, defendant knew that he was required to file transaction reports for currency transactions exceeding $10,000, verify customer information, and was required to have policies, procedures, and/or internal control to ensure that these requirements were satisfied. Additionally, defendant knew that he was required to file a suspicious activity report for a transaction exceeding $2,000 for which he knew, suspected, or had reason to suspect that the transaction involved use of his business to facilitate criminal activity (the trafficking of drugs). Despite this knowledge, defendant failed to obtain identification from his customers, including those who were selling drugs on the darknet and those who represented to him that they were selling drugs, and failed to file suspicious activity reports.

## SENTENCING FACTORS

21. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

22.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

**COUNT ONE:   DISTRIBUTION OF CONTROLLED SUBSTANCES**

| | | |
|---|---|---|
| Base Offense Level: | 34 | [U.S.S.G. § 2D1.1(c)(3)] |
| Safety Valve: | -2 | [U.S.S.G. § 2D1.1(b)(16)] |
| Acceptance of Responsibility | -3 | [U.S.S.G. § 3E1.1] |

**COUNT TWO:   UNLICENSED MONEY REMITTING**

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2S1.3(a)(2)] |
| Value of Funds ($9.5-$25 million) | | [U.S.S.G. § 2S1.3(a)(2), |
| | +20 | 2B1.1(b)(1)(K)] |
| Source of Funds | +2 | |

**COUNT THREE:   LAUNDERING OF MONETARY INSTRUMENTS**

| | | |
|---|---|---|
| Base Offense Level: | 8 | [U.S.S.G. § 2S1.1(a)(2)] |
| Value of Laundered Funds | | [U.S.S.G. § 2S1.3(A)(2), |
| | +12 | 2B1.1(b)(1)(K)] |
| 1956 Conviction | +2 | [U.S.S.G. § 2S1.1(b)(2)(B)] |
| Business of Laundering Funds | +4 | [U.S.S.G. § 2S1.1(b)(2)(C)] |
| Illicit Proceeds | +6 | [U.S.S.G. § 2S1.1(b)(1)] |

**COUNT FOUR:   FAILURE TO IMPLEMENT ANTI MONEY LAUNDERING PROGRAM**

| | | |
|---|---|---|
| Base Offense Level: | 8 | [U.S.S.G. § 2S1.1(a)(2)] |
| Unlawful Activity | +2 | [U.S.S.G. § 2S1.1(b)(1)] |
| Part of an Offense Exceeding $100,000 | +2 | [U.S.S.G. § 2S1.1(b)(2)] |

The parties agree that all of the counts are one "group" and therefore the combined total offense level is determined by Count One, as set forth above. The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 4.c) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below. Subject to paragraph 36 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics or adjustments relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

23. Defendant and the USAO agree that:

a. Defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offenses charged, including in count one;

b. The offenses charged, including count one, did not result in death or serious bodily injury to any person; and

1          c.    Defendant was not an organizer, leader, manager, or

2 supervisor of others in the offense charged in count one and was not

3 engaged in a continuing criminal enterprise for any of the offenses

4 charged.

5    24.  Defendant understands that there is no agreement as to

6 defendant's criminal history or criminal history category.

7    25.  Defendant and the USAO reserve the right to argue for a

8 sentence outside the sentencing range established by the Sentencing

9 Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

10 (a)(2), (a)(3), (a)(6), and (a)(7).

11 <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

12    26.  Defendant understands that by pleading guilty, defendant

13 gives up the following rights:

14          a.    The right to persist in a plea of not guilty.

15          b.    The right to a speedy and public trial by jury.

16          c.    The right to be represented by counsel -- and if

17 necessary have the court appoint counsel -- at trial.  Defendant

18 understands, however, that, defendant retains the right to be

19 represented by counsel -- and if necessary have the court appoint

20 counsel -- at every other stage of the proceeding.

21          d.    The right to be presumed innocent and to have the

22 burden of proof placed on the government to prove defendant guilty

23 beyond a reasonable doubt.

24          e.    The right to confront and cross-examine witnesses

25 against defendant.

26          f.    The right to testify and to present evidence in

27 opposition to the charges, including the right to compel the

28 attendance of witnesses to testify.

1    g.    The right not to be compelled to testify, and, if
2 defendant chose not to testify or present evidence, to have that
3 choice not be used against defendant.

4    h.    Any and all rights to pursue any affirmative defenses,
5 Fourth Amendment or Fifth Amendment claims, and other pretrial
6 motions that have been filed or could be filed.

7                    WAIVER OF RETURN OF DIGITAL DATA

8    27.   Understanding that the government has in its possession
9 digital devices and/or digital media seized from defendant, defendant
10 waives any right to the return of digital data contained on those
11 digital devices and/or digital media and agrees that if any of these
12 digital devices and/or digital media are returned to defendant, the
13 government may delete all digital data from those digital devices
14 and/or digital media before they are returned to defendant.

15                    WAIVER OF APPEAL OF CONVICTIONS

16    28.   Defendant understands that, with the exception of an appeal
17 based on a claim that defendant's guilty pleas were involuntary, by
18 pleading guilty defendant is waiving and giving up any right to
19 appeal defendant's convictions on the offenses to which defendant is
20 pleading guilty.  Defendant understands that this waiver includes,
21 but is not limited to, arguments that the statutes to which defendant
22 is pleading guilty are unconstitutional, and any and all claims that
23 the statement of facts provided herein is insufficient to support
24 defendant's pleas of guilty.

25               LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

26    29.   Defendant agrees that, provided the Court imposes a total
27 term of imprisonment on all counts of conviction of no more than 108
28 months, defendant gives up the right to appeal all of the following:

(a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant in paragraph 2 above.

30. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 87 months, the USAO gives up its right to appeal any portion of the sentence.

WAIVER OF COLLATERAL ATTACK

31. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

1

### RESULT OF WITHDRAWAL OF GUILTY PLEAS

2      32.   Defendant agrees that if, after entering guilty pleas
3   pursuant to this agreement, defendant seeks to withdraw and succeeds
4   in withdrawing defendant's guilty pleas on any basis other than a
5   claim and finding that entry into this plea agreement was
6   involuntary, then the USAO will be relieved of all of its obligations
7   under this agreement

8                    ### EFFECTIVE DATE OF AGREEMENT

9      33.   This agreement is effective upon signature and execution of
10   all required certifications by defendant, defendant's counsel, and an
11   Assistant United States Attorney.

12                        ### BREACH OF AGREEMENT

13      34.   Defendant agrees that if defendant, at any time after the
14   signature of this agreement and execution of all required
15   certifications by defendant, defendant's counsel, and an Assistant
16   United States Attorney, knowingly violates or fails to perform any of
17   defendant's obligations under this agreement ("a breach"), the USAO
18   may declare this agreement breached.  All of defendant's obligations
19   are material, a single breach of this agreement is sufficient for the
20   USAO to declare a breach, and defendant shall not be deemed to have
21   cured a breach without the express agreement of the USAO in writing.
22   If the USAO declares this agreement breached, and the Court finds
23   such a breach to have occurred, then: (a) if defendant has previously
24   entered guilty pleas pursuant to this agreement, defendant will not
25   be able to withdraw the guilty pleas, and (b) the USAO will be
26   relieved of all its obligations under this agreement.

27

28

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

## OFFICE NOT PARTIES

35.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

36.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 21 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

37.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea[s], and defendant will remain bound

1  to fulfill all defendant's obligations under this agreement.
2  Defendant understands that no one -- not the prosecutor, defendant's
3  attorney, or the Court -- can make a binding prediction or promise
4  regarding the sentence defendant will receive, except that it will be
5  within the statutory maximum.

6  NO ADDITIONAL AGREEMENTS

7     38.  Defendant understands that, except as set forth herein, and
8  in any contemporaneous agreements or addendum signed by all parties,
9  there are no promises, understandings, or agreements between the USAO
10 and defendant or defendant's attorney, and that no additional
11 ///
12 ///

promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

39.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_Puneet V Kakkar_         August 20, 2019
PUNEET V. KAKKAR        Date
Assistant United States Attorney

_Kunal Kalra_           8/20/19
KUNAL KALRA         Date
Defendant

_B — E. Kl_           8/20/19
BRIAN E. KLEIN       Date
ASHLEY E. MARTABANO
Attorney for Defendant KUNAL KALRA

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

26

of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement or in an agreement signed by all parties or on the record in court. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          8/20/19
KUNAL KALRA                               Date
Defendant

1            CERTIFICATION OF DEFENDANT'S ATTORNEY

2        I am KUNAL KALRA's attorney.  I have carefully and thoroughly

3 discussed every part of this agreement with my client.  Further, I

4 have fully advised my client of his rights, of possible pretrial

5 motions that might be filed, of possible defenses that might be

6 asserted either prior to or at trial, of the sentencing factors set

7 forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8 provisions, and of the consequences of entering into this agreement.

9 To my knowledge: no promises, inducements, or representations of any

10 kind have been made to my client other than those contained in this

11 agreement or in an agreement signed by all parties or on the record

12 in court; no one has threatened or forced my client in any way to

13 enter into this agreement; my client's decision to enter into this

14 agreement is an informed and voluntary one; and the factual basis set

15 forth in this agreement is sufficient to support my client's entry of

16 guilty pleas pursuant to this agreement.

17     *B - C. Kle*                 8/20/19

18 BRIAN E. KLEIN                     Date

ASHLEY E. MARTABANO

19 Attorneys for Defendant KUNAL KALRA

20

21

22

23

24

25

26

27

28

# Exhibit A

1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT

9             FOR THE CENTRAL DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,          CR No.

11            Plaintiff,               I N F O R M A T I O N

12            v.                       [21 U.S.C. § 841(a)(1),
                                       (b)(1)(A)(viii): Distribution of
13  KUNAL KALRA,                       Methamphetamine; 18 U.S.C.
        aka "Kumar,"                   §§ 1960(a), (b)(1)(B): Operating
14          "shecklemayne," and        an Unlicensed Money Transmitting
            "coinman,"                 Business; 18 U.S.C.
15                                     § 1956(a)(3)(B): Laundering of
            Defendant.                 Monetary Instruments; 31 U.S.C.
16                                     §§ 5318(h), 5322: Failure to
                                       Maintain an Effective Anti-Money
17                                     Laundering Program]

18

19       The United States Attorney charges:

20                            COUNT ONE

21            [21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

22       On or about June 1, 2017, in Los Angeles County, within the

23  Central District of California, defendant KUNAL KALRA, also known as

24  ("aka") "Kumar," "shecklemayne," and "coinman," knowingly and

25  intentionally distributed at least fifty grams, that is, 881.8 grams,

26  of methamphetamine, a Schedule II controlled substance.

27

28

COUNT TWO

[18 U.S.C. §§ 1960(a), (b)(1)(B)]

Beginning in or about May 2015, and continuing until on or about October 12, 2017, in Los Angeles County, within the Central District of California, defendant KUNAL KALRA, also known as ("aka") "Kumar," "shecklemayne," and "coinman," knowingly conducted, controlled, managed, supervised, directed, and owned an unlicensed money transmitting business affecting interstate and foreign commerce, namely, a virtual currency exchange business, that failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and the regulations thereunder.

COUNT THREE

[18 U.S.C. § 1956(a)(3)(B)]

On or about June 23, 2017, in Los Angeles County, within the Central District of California, defendant KUNAL KALRA, also known as ("aka") "Kumar," "shecklemayne," and "coinman," with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, that is, the felonious importation, receiving, buying, selling, and otherwise dealing in controlled substances punishable under a law of the United States ("drug trafficking"), knowingly conducted the following financial transaction, affecting interstate commerce, involving property represented by an authorized agent of the United States government to be proceeds of specified unlawful activity, that is, drug trafficking.

Transaction:  The exchange of 38.55331617 Bitcoin for $98,372.00 in United States dollars, plus fees (Blockchain transaction ID ea76ff13ce53c71db174133df664126e20d48743b7f3739c229141f508981917).

3

COUNT FOUR

[31 U.S.C. §§ 5318(h), 5322]

Beginning in or about May 2015, and continuing until in or about October 12, 2017, in the Central District of California, defendant KUNAL KALRA, also known as ("aka") "Kumar," "shecklemayne," and "coinman," did willfully violate the Bank Secrecy Act, Title 31, United States Code, Sections 5318(h)(2) and 5322, and regulations issued thereunder, specifically, Title 31, Code of Federal Regulations, Section 1022.210(a), by failing to develop, implement, and maintain an effective anti-money laundering program for his virtual currency exchange business.

Specifically, defendant KALRA knowingly and willfully failed to implement and maintain effective policies, procedures, and internal controls for (1) verifying customer identification, in particular as to customers exchanging in excess of $10,000 in currency in a single day as required by the Bank Secrecy Act; (2) filing Currency Transaction Reports for currency transactions in excess of $10,000, conducted by or on behalf of the same person on the same day; and (3) filing Suspicious Activity Reports for transactions over $2,000 involving funds that defendant knew, suspected, or had reason to suspect that the transaction involved use of the money services business to facilitate criminal activity.

Defendant KALRA took actions designed to prevent the implementation and maintenance of an effective anti-money laundering program, in that he: (1) failed to file currency transaction reports as required for currency transactions exceeding $10,000 that were conducted by or on behalf of the same person on the same day; (2) failed to file suspicious activity reports for transactions over

4

1  $2,000 that he knew, suspected, and had reason to suspect that the
2  transaction involved use of his business to facilitate criminal
3  activity, namely, drug trafficking; and (3) operated a kiosk by which
4  customers could conduct suspicious virtual currency transactions and
5  transactions exceeding $10,000 in the same day without providing any
6  form of identification.

7
8                          NICOLA T. HANNA
9                          United States Attorney
10
11
                          BRANDON D. FOX
12                        Assistant United States Attorney
                          Chief, Criminal Division
13
                          CAROL A. CHEN
14                        Assistant United States Attorney
                          Chief, International Narcotics, Money
15                          Laundering, and Racketeering Section
16
                          PUNEET V. KAKKAR
17                        Assistant United States Attorney
                          Deputy Chief, International Narcotics, Money
18                          Laundering, and Racketeering Section
19
20
21
22
23
24
25
26
27
28

# Exhibit B

1  JOHN F. BASH
   United States Attorney
2  GREGG SOFFER
   Assistant United States Attorney
3  Chief, Criminal Division
   SARAH WANNARKA
4  Assistant United States Attorney
        601 NW Loop 410, SUITE 600
5       San Antonio, Texas 78216
        Telephone: 210-384-7150
6       Facsimile: 210-384-7118
        E-mail:   sarah.wannarka@usdoj.gov
7
   Attorneys for Plaintiff
8  UNITED STATES OF AMERICA

9              UNITED STATES DISTRICT COURT

10          FOR THE WESTERN DISTRICT OF TEXAS

11 UNITED STATES OF AMERICA,          SA-19-CR-_____

12          Plaintiff,                PLEA AGREEMENT FOR DEFENDANT
                                      KUNAL KALRA
13              v.

14 KUNAL KALRA,

15          Defendant.

16

17     1.    This constitutes the plea agreement between KUNAL KALRA

18 ("defendant") and the United States Attorney's Office for the Western

19 District of Texas ("the USAO") in the above-captioned case.  All

20 rights or powers of the USAO under this agreement may be exercised on

21 behalf of the USAO by the United States Attorney's Office for the

22 Central District of California. This agreement is limited to the USAO

23 and cannot bind any other federal, state, local, or foreign

24 prosecuting, enforcement, administrative, or regulatory authorities.

25                    DEFENDANT'S OBLIGATIONS

26     2.    Defendant agrees to:

27          a.    At the earliest opportunity requested by the USAO and

28 provided by the Court, appear and plead guilty to Count One of the

Information in this cause which charges defendant with Conspiracy to Launder Monetary Instruments in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (h).

        b.    Not contest facts agreed to in this agreement.

        c.    Abide by all agreements regarding sentencing contained in this agreement.

        d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

        e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

        f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

        g.    Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

### FORFEITURE AND FINANCIAL ACCOUNTABILITY

3.    Defendant further agrees to:

        a.    Truthfully disclose to law enforcement officials, at a date and time to be set by the USAO, the location of, defendant's ownership interest in, and all other information known to defendant about, all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, defendant's illegal activities, and to forfeit all right, title, and interest in and to such items, specifically including all right,

1  title, and interest in and to all United States currency, property
2  and assets, including: a Money Judgement totaling $391,407.00:
3  $270,000 in United States Currency given towards a Qwench Juice
4  Franchise, $20,000 in United States Currency from the sale of
5  narcotics, $27,407 in United States Currency as profit from
6  laundering Bitcoins, and $74,000 in United States Currency which
7  KALRA deposited into his BRIGHTMODEL bank account from a co-
8  defendant, all of which defendant admits constitute the proceeds of
9  defendant's illegal activity in violation of Title 18, United States
10 Code, Sections 1956(a)(1)(B)(i) and (h).

11        b.    To the Court's entry of an order of forfeiture at or
12 before sentencing with respect to these assets and to the forfeiture
13 of the assets.

14        c.    To take whatever steps are necessary to pass to the
15 United States clear title to the assets described above, including,
16 without limitation, the execution of a consent decree of forfeiture
17 and the completing of any other legal documents required for the
18 transfer of title to the United States.

19        d.    Not to contest any administrative forfeiture
20 proceedings or civil judicial proceedings commenced against these
21 properties pursuant to Title 18 U.S.C. § 982(a) (1). With respect to
22 any criminal forfeiture ordered as a result of this plea agreement,
23 defendant waives the requirements of Federal Rules of Criminal
24 Procedure 32.2 and 43(a) regarding notice of the forfeiture in the
25 charging instrument, announcements of the forfeiture sentencing, and
26 incorporation of the forfeiture in the judgment.  Defendant
27 acknowledges that forfeiture of the assets is part of the sentence
28 that may be imposed in this case and waives any failure by the Court

3

to advise defendant of this, pursuant to Federal Rule of Criminal
Procedure 11(b)(1)(J), at the time the Court accepts defendant's
guilty plea.

e.   Not to assist any other individual in any effort
falsely to contest the forfeiture of the assets described above.

f.   Not to claim that reasonable cause to seize the assets
was lacking.

g.   To prevent the transfer, sale, destruction, or loss of
any and all assets described above to the extent defendant has the
ability to do so.

h.   To fill out and deliver to the USAO a completed
financial statement listing defendant's assets on a form provided by
the USAO.

i.   That forfeiture of assets described above shall not be
counted toward satisfaction of any special assessment, fine,
restitution, costs, or other penalty the Court may impose.

THE USAO'S OBLIGATIONS

4.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained
in this agreement.

c.   At the time of sentencing, provided that defendant
demonstrates an acceptance of responsibility for the offense up to
and including the time of sentencing, recommend a two-level reduction
in the applicable Sentencing Guidelines offense level, pursuant to
U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
additional one-level reduction if available under that section.

4

d. Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 21 U.S.C. §§ 841 & 846 arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph below. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

e. Recommend that the sentence imposed with respect to the Central District of California action, to which this plea agreement is attached as Exhibit B, run concurrently with the sentence imposed in this action.

### NATURE OF THE OFFENSES

5. Defendant understands that for defendant to be guilty of the crime charged in Count One of the Information, that is, Conspiracy to Launder Monetary Instruments in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (h), the following must be true: From September 2015 and continuing through November 15, 2017, in the Western District of Texas, the Southern District of Texas, and the Central District of California, defendant, did knowingly combine, conspire, confederate, and agree with others, to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, knowing that the property involved in

1  such financial transactions represented the proceeds of some form of
2  unlawful activity, such property being, in fact, the proceeds of a
3  specified unlawful activity, to wit: conspiracy to distribute a
4  controlled substance in violation of 21 U.S.C. §§ 841 & 846, knowing
5  that the transaction is designed in whole or in part to conceal or
6  disguise the nature, the location, the source, the ownership, or the
7  control of the proceeds of said specified unlawful activity.

8                            PENALTIES

9       6.   Defendant understands that the statutory maximum sentence
10  that the Court can impose for a violation of Title 18, United States
11  Code, Sections 1956(a)(1)(B)(i) and (h), is: 20 years
12  imprisonment; a three-year period of supervised release; a maximum
13  fine of $500,000 fine, or twice the value of the property involved,
14  whichever is greater; and a mandatory special assessment of $100.

15      7.   Defendant understands that supervised release is a period
16  of time following imprisonment during which defendant will be subject
17  to various restrictions and requirements.  Defendant understands that
18  if defendant violates one or more of the conditions of any supervised
19  release imposed, defendant may be returned to prison for all or part
20  of the term of supervised release authorized by statute for the
21  offense that resulted in the term of supervised release, which could
22  result in defendant serving a total term of imprisonment greater than
23  the statutory maximum stated above.

24      8.   Defendant understands that, by pleading guilty, defendant
25  may be giving up valuable government benefits and valuable civic
26  rights, such as the right to vote, the right to possess a firearm,
27  the right to hold office, and the right to serve on a jury.
28  Defendant understands that once the court accepts defendant's guilty

                                6

1  plea, it will be a federal felony for defendant to possess a firearm
2  or ammunition.  Defendant understands that the conviction in this
3  case may also subject defendant to various other collateral
4  consequences, including but not limited to revocation of probation,
5  parole, or supervised release in another case and suspension or
6  revocation of a professional license.  Defendant understands that
7  unanticipated collateral consequences will not serve as grounds to
8  withdraw defendant's guilty plea.

9       9.   Defendant understands that, if defendant is not a United
10 States citizen, the felony conviction in this case may subject
11 defendant to: removal, also known as deportation, which may, under
12 some circumstances, be mandatory; denial of citizenship; and denial
13 of admission to the United States in the future.  The court cannot,
14 and defendant's attorney also may not be able to, advise defendant
15 fully regarding the immigration consequences of the felony conviction
16 in this case.  Defendant understands that unexpected immigration
17 consequences will not serve as grounds to withdraw defendant's guilty
18 plea.

19      10.  The Court will also order forfeiture of the property listed
20 in the Information, and described in paragraph 3, pursuant to Title
21 18 U.S.C. § 982(a)(1)or substitute assets up to the value of that
22 property.

23                              FACTUAL BASIS

24      11.  Defendant admits that defendant is, in fact, guilty of the
25 offenses to which defendant is agreeing to plead guilty.  Defendant
26 and the USAO agree to the statement of facts provided below and agree
27 that this statement of facts is sufficient to support a plea of
28 guilty to the charge described in this agreement and to establish the

1    Sentencing Guidelines factors set forth below but is not meant to be

2    a complete recitation of all facts relevant to the underlying

3    criminal conduct or all facts known to either party that relate to

4    that conduct.

5        In December 2015, San Antonio, Texas Police Department (SAPD)

6    and University of Texas San Antonio Police Department (UTSAPD) began
     investigating a surge of hydroponic marijuana and various
7    prescription medications on the campus and in student housing at the
     University of Texas San Antonio (UTSA). Through a series of seizures
8    and local arrests, SAPD and UTSAPD Officers identified the source of
     supply for the influx of drugs on the campus as a middle eastern male
9    named Alaa Mohammed ALLAWI (hereafter ALLAWI). DEA agents identified
     that ALLAWI produces his own fraudulent prescription tablets in San
10   Antonio, Texas, to imitate Oxycodone, Adderall, and Xanax tablets.
     Furthermore, said fraudulent prescription tablets being produced by
11   ALLAWI are laced with methamphetamine and fentanyl. ALLAWI utilizes
     the dark net website called AlphaBay to sell his fraudulent pills. As
12   payment, ALLAWI accepts digital currency, such as BitCoins. ALLAWI
     began his drug trafficking organization in San Antonio, Texas, in the
13   Western District of Texas.

14

15       Through the monitoring of telephone calls pursuant to a court
     authorized Title III intercept for Target Telephone #2 utilized by
16   ALLAWI, agents identified Kunal KALRA, (hereafter KALRA) as someone
     ALLAWI works with in ALLAWI's drug trafficking organization. KALRA
17   has been identified as a money launderer in California who
     specializes as a digital currency Bitcoin exchanger. KALRA receives
18   BitCoins from ALLAWI that ALLAWI receives as payment for narcotics
     trafficking. KALRA then converts the Bitcoins into U.S. Currency for
19   ALLAWI in order to "clean" or legitimize the currency. Furthermore,
     ALLAWI supplies KALRA with shipments of fraudulent prescription
20   tablets to sell.

21

22       KALRA received two shipments of pills from ALLAWI to sell,
     consisting of Xanax, Adderall (laced with methamphetamine), and
23   oxycodone pills (laced with fentanyl). KALRA sold the pills wholesale
     to an individual with a 30% markup. KALRA profited approximately
24   $20,000 from the sale of pills. KALRA never received the third order
     of pills from ALLAWI.

25

26       Specifically, on April 3, 2017, at approximately 4:06 p.m.,
     ALLAWI, utilizing Target Telephone #2, contacted KALRA via SMS text
27   message. During the text, ALLAWI wrote, "Ay white and green available
     Thursday." KALRA responded, "Perfect. Send to same add." In that
28   text, ALLAWI advised KALRA that a shipment of fraudulent Xanax
     tablets will be ready for KALRA to purchase on Thursday. KALRA

                                   8

1   advised ALLAWI to mail the fraudulent Xanax tablets to the same
2   address where KALRA had previously received fraudulent prescription
    tablets. ALLAWI's fraudulent prescription Xanax tablets are white and
3   green in color.

4        On April 12, 2017, at approximately 11:41 a.m., ALLAWI utilizing
    Target Telephone #2 contacted co-defendant BENJAMIN ITA UNO. UNO
5   assists ALLAWI in the packaging and shipping of ALLAWI's fraudulent
    pills. During the call, ALLAWI asked UNO for his current location.
6   UNO advised ALLAWI that UNO just dropped multiple packages of
    fraudulent prescription tablets into the mail at a local U.S. Post
7   Office. DEA agents coordinated with the United States Postal
8   Inspection Service (USPIS) to locate the packages dropped in the mail
    system by UNO. USPIS was able to locate multiple packages in
9   different points of transit based on intercepts of Target Telephone
    #2 and third party mail accounts associated with ALLAWI.
10

11       On April 30, 2017, USPIS located a parcel in transit based on
    USPS account records associated with ALLAWI's third party postal
12  account destined to an apartment on Greenfield Ave., in Los Angeles,
    California, in the Central District of California. Agents had
13  previously identified said address as the mailing address for KALRA.
    Los Angeles, California USPIS intercepted the package intended for
14  KARLA. Pursuant to a federal search warrant, USPIS seized 2.65
    kilograms of fraudulent Xanax tablets and 205 grams of fraudulent
15  Oxycodone tablets laced with fentanyl [(2D1.1(c)(7)] from the package
16  ALLAWI and UNO mailed to KALRA. This was the third order from ALLAWI
    that KALRA never received.
17

18       On May 11, 2017, at approximately 12:57 p.m., ALLAWI, utilizing
    Target Telephone #2, contacted KALRA. During the call, KALRA advised
19  ALLAWI that KALRA had not received the package that ALLAWI sent.
    KALRA and ALLAWI discussed how KALRA went to the Post Office and
20  questioned Post Office officials about the location of his package
    and ultimately believed that the postal workers are stealing the
21  packages. ALLAWI advised KALRA that ALLAWI would re-ship another
22  package to KALRA. On that same day at approximately 3:56 p.m.,
    ALLAWI, utilizing Target Telephone #2, contacted UNO. During the
23  call, UNO advised he was still pressing tablets and filling orders
    that will ultimately be mailed out at a later date. ALLAWI advised
24  UNO to remember to ship the package out to KALRA as well. At
    approximately 8:10 p.m., KALRA contacted ALLAWI, utilizing Target
25  Telephone #2, via text message. During the text, KALRA wrote his
    exact mailing address. KALRA provided ALLAWI KALRA's address again to
26  ship a new package containing fraudulent prescription tablets.

27       On May 14, 2017, at approximately 10:20 PM, KALRA contacted
    ALLAWI, utilizing Target Telephone #2. During the call, ALLAWI
28  invited KALRA for a night out, but KALRA negated and explained to

                                    9

ALLAWI that KALRA needed to transfer four hundred thousand dollars into Bitcoins. KALRA explained to ALLAWI that KALRA transfers significant sums on a monthly basis. KALRA stated that he transfers some of the currency with his bank account, but he keeps more of the currency out of his banking accounts. KALRA stated that he makes a 5% fee for each transfer KALRA profited approximately $27,407.00 from the illegal drug proceeds he laundered for ALLAWI.

On September 12, 2016 in Bexar County, Texas, in the Western District of Texas, ALLAWI filed an Assumed Name Certificate for WHATACREATIVE as a sole proprietorship. ALLAWI opened a business checking account ending in 1244 at a Bank of America in San Antonio, Texas for WHATACREATIVE. ALLAWI used this bank account to launder his Bitcoins with KALRA. KALRA has a business in California named BRIGHT MODEL, according to the California Secretary of State. In order to process the Bitcoins, KALRA goes through a Bitcoin exchange service called Gemini Trust.

From September 9, 2016 through May 31, 2017, WHATACREATIVE bank records show 19 deposit transactions from BRIGHT MODEL, totaling approximately $548,132.26. T-III wire intercepts, surveillance, and other financial records reveal the process of how KALRA laundered ALLAWI's Bitcoins which ALLAWI received through drug trafficking. Records and calls indicate that ALLAWI directed his drug proceeds in the form of Bitcoins (from the dark net narcotic purchases on Alpha Bay) to KALRA. KALRA then utilized his online digital asset account at Gemini Trust. KALRA then converted the Bitcoins into U.S. currency within his Gemini Trust account. The U.S. currency was then wired from Gemini Trust to KALRA's controlled bank accounts under the business name BRIGHT MODEL. KALRA concealed the true nature of the funds when he sent U.S. Currency back to ALLAWI in either the form of a cashier's check or direct deposit, from the BRIGHT MODEL bank accounts into the WHATACREATIVE bank account.

On April 11, 2017, ALLAWI, using Target Telephone #2, tells an associate, that he (ALLAWI) sent 50 with KALRA and that the associate can pick it up from KALRA. On April 11, 2017, $50,000 is wired and deposited into KALRA's Gemini Trust online digital asset account from the BRIGHT MODEL bank account. On April 25, 2017, ALLAWI told KALRA to send 52 and he (ALLAWI) will send 10 coins (Bitcoins). On April 25, 2017, KALRA wired out $52,667.27 from the Gemini Trust online digital asset account.

On May 19, 2017, ALLAWI obtained a cashier's check written to BRIGHT MODEL INC in the amount of $74,000 from the WHATACREATIVE bank account. The transaction was conducted in West Los Angeles, California. Additionally, on the same date, KALRA deposited the $74,000 cashier's check into his BRIGHT MODEL bank account held at

1   Wells Fargo. ALLAWI cleared his WHATACREATIVE bank account due to the
2   federal search warrant that was executed on May 17, 2017 at his
    residence where his pill presses were located in Richmond, Texas.

3
4       Based on court-authorized T-III intercepts of Target Telephone
    #2 utilized by ALLAWI, agents learned that ALLAWI was coordinating
5   with ERIC GOSS, KALRA and Mostafa Narinanzadeh to utilize proceeds
    from the sale of narcotics on the dark web to invest in Drnk Coffee +
6   Tea and Qwench Juice Bar Franchises. ALLAWI utilized GOSS to assist
    ALLAWI in locating potential locations to open the Qwench Franchise
7   in the Houston, Texas area; KALRA would conduct the Bitcoin
    transactions that would provide capital for the initial investment
8   into the Franchise, and Narinanzadeh, the CEO of Qwench, would
    arrange the contracts and sell the Franchises to ALLAWI. On May 9,
9   2017, Narinanzadeh contacted ALLAWI on Target Telephone #2 and
    Narinanzadeh advised ALLAWI that there would be a meeting in Los
10  Angeles on May 12, 2017 to complete the Franchise transaction. On May
    9, 2017, Narinanzadeh contacted ALLAWI on Target Telephone #2 and
11  Narinanzadeh told ALLAWI to bring the signed agreement for the
    Franchise contract along with a check to pay for the Franchise fee.
12  According to the Drnk Coffee + Tea and Qwench Juice Bar contracts
13  seized from ALLAWI's property on May 17, 2017, ALLAWI would need to
    provide $35,000.00 per contract at the time of the meeting.
14
        On May 11, 2017, Narinanzadeh contacted ALLAWI on Target
15  Telephone #2 and Narinanzadeh told ALLAWI that Narinanzadeh would
16  pick ALLAWI and KALRA up the following morning to go to the meeting
    to sign all the Franchise documents. On May 12, 2017, DEA Los
17  Angeles, in coordination with the Los Angeles Police Department
    surveillance units, observed Narinanzadeh pick up ALLAWI and KALRA
18  and drive to a high-rise business park in Los Angeles. Surveillance
    units observed said parties enter the building and go into an office
19  located on the 30th floor. Throughout the mid-morning and afternoon,
    surveillance units observed the targets come to and from the
20  building. On May 15, 2017, KALRA contacted ALLAWI on Target Telephone
21  #2 and the two discussed KALRA needing a shipment of Adderall
    tablets. Additionally, ALLAWI advised KALRA that ALLAWI was going to
22  need a large amount of Bitcoins transferred into U.S. Currency in the
    near future. This transaction would consist of the initial capital
23  needed for ALLAWI to complete the Qwench Franchise contracts. An open
    source data search revealed that a minimum cash requirement of
24  $250,000.00 to begin a franchise for Drnk Coffee + Tea and Qwench
25  Juice Bar with a net-worth requirement of $500,000.00 to
    $1,000,000.00. According to KALRA, KALRA gave Narinanzadeh $270,000
26  of illegal drug proceeds towards a Qwench franchise in Westwood,
    California. After ALLAWI was arrested, Narinanzadeh cut off all ties
27  to KALRA, and did not return the $270,000.
28

ALLAWI and KALRA conspired to conduct financial transactions affecting interstate commerce, knowing that the property involved in such financial transactions represented the proceeds of drug trafficking in violation of 21 U.S.C. §§ 841 & 846. ALLAWI and KALRA knew the transactions were designed to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of the drug trafficking. Specifically, ALLAWI and KALRA worked together to launder at least $548,132.26 in drug trafficking proceeds through the use of Bitcoins and Bitcoin exchange services. These transactions occurred utilizing, in part, ALLAWI's Bank of America back account, which he set up in San Antonio, Texas, in the Western District of Texas.

## SENTENCING FACTORS

12.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

13.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 26 | § 2S1.1(a)(1)/2D1.1(c)(7) |
| Specific Offense Characteristics | +2 | §2S1.1(b)(2)(B) |
| Acceptance of Responsibility: | -3 | § 3E1.1(b) |

12

Total Offense Level:          25

Subject to paragraph 24 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

                    WAIVER OF CONSTITUTIONAL RIGHTS

     14.  Defendant understands that by pleading guilty, defendant gives up the following rights:

          a.   The right to persist in a plea of not guilty.

          b.   The right to a speedy and public trial by jury.

          c.   The right to be represented by counsel - and if necessary have the court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be

represented by counsel – and if necessary have the court appoint counsel – at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    The right to have his case presented to a Grand Jury.

i.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

15.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

16. Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 71 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant in paragraph 2 above.

17. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 57 months, the USAO gives up its right to appeal any portion of the sentence.

WAIVER OF COLLATERAL ATTACK

18. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an

15

1   explicitly retroactive change in the applicable Sentencing

2   Guidelines, sentencing statutes, or statutes of conviction.

3               RESULT OF WITHDRAWAL OF GUILTY PLEA

4      19.  Defendant agrees that if, after entering a guilty plea

5   pursuant to this agreement, defendant seeks to withdraw and succeeds

6   in withdrawing defendant's guilty plea on any basis other than a

7   claim and finding that entry into this plea agreement was

8   involuntary, then (a) the USAO will be relieved of all of its

9   obligations under this agreement and (b) should the USAO choose to

10   pursue any charge that was either dismissed or not filed as a result

11   of this agreement, then (i) any applicable statute of limitations

12   will be tolled between the date of defendant's signing of this

13   agreement and the filing commencing any such action; and

14   (ii) defendant waives and gives up all defenses based on the statute

15   of limitations, any claim of pre-indictment delay, or any speedy

16   trial claim with respect to any such action, except to the extent

17   that such defenses existed as of the date of defendant's signing this

18   agreement.

19               EFFECTIVE DATE OF AGREEMENT

20      20.  This agreement is effective upon signature and execution of

21   all required certifications by defendant, defendant's counsel, and an

22   Assistant United States Attorney.

23               BREACH OF AGREEMENT

24      21.  Defendant agrees that if defendant, at any time after the

25   signature of this agreement and execution of all required

26   certifications by defendant, defendant's counsel, and an Assistant

27   United States Attorney, knowingly violates or fails to perform any of

28   defendant's obligations under this agreement ("a breach"), the USAO

1   may declare this agreement breached.  All of defendant's obligations
2   are material, a single breach of this agreement is sufficient for the
3   USAO to declare a breach, and defendant shall not be deemed to have
4   cured a breach without the express agreement of the USAO in writing.
5   If the USAO declares this agreement breached, and the Court finds
6   such a breach to have occurred, then: (a) if defendant has previously
7   entered a guilty plea pursuant to this agreement, defendant will not
8   be able to withdraw the guilty plea, and (b) the USAO will be
9   relieved of all its obligations under this agreement.

10      22.  Following the Court's finding of a knowing breach of this
11  agreement by defendant, should the USAO choose to pursue any charge
12  that was either dismissed or not filed as a result of this agreement,
13  then:

14      a.  Defendant agrees that any applicable statute of
15  limitations is tolled between the date of defendant's signing of this
16  agreement and the filing commencing any such action.

17      b.  Defendant waives and gives up all defenses based on
18  the statute of limitations, any claim of pre-indictment delay, or any
19  speedy trial claim with respect to any such action, except to the
20  extent that such defenses existed as of the date of defendant's
21  signing this agreement.

22      c.  Defendant agrees that: (i) any statements made by
23  defendant, under oath, at the guilty plea hearing (if such a hearing
24  occurred prior to the breach); (ii) the agreed to factual basis
25  statement in this agreement; and (iii) any evidence derived from such
26  statements, shall be admissible against defendant in any such action
27  against defendant, and defendant waives and gives up any claim under
28  the United States Constitution, any statute, Rule 410 of the Federal

17

1 Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

2 Procedure, or any other federal rule, that the statements or any

3 evidence derived from the statements should be suppressed or are

4 inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

7     23.  Defendant understands that the Court and the United States

8 Probation and Pretrial Services Office are not parties to this

9 agreement and need not accept any of the USAO's sentencing

10 recommendations or the parties' agreements to facts or sentencing

11 factors.

12     24.  Defendant understands that both defendant and the USAO are

13 free to: (a) supplement the facts by supplying relevant information

14 to the United States Probation and Pretrial Services Office and the

15 Court, (b) correct any and all factual misstatements relating to the

16 Court's Sentencing Guidelines calculations and determination of

17 sentence, and (c) argue on appeal and collateral review that the

18 Court's Sentencing Guidelines calculations and the sentence it

19 chooses to impose are not error, although each party agrees to

20 maintain its view that the calculations in paragraph 13 are

21 consistent with the facts of this case.  While this paragraph permits

22 both the USAO and defendant to submit full and complete factual

23 information to the United States Probation and Pretrial Services

24 Office and the Court, even if that factual information may be viewed

25 as inconsistent with the facts agreed to in this agreement, this

26 paragraph does not affect defendant's and the USAO's obligations not

27 to contest the facts agreed to in this agreement.

28

1    25.  Defendant understands that even if the Court ignores any
2  sentencing recommendation, finds facts or reaches conclusions
3  different from those agreed to, and/or imposes any sentence up to the
4  maximum established by statute, defendant cannot, for that reason,
5  withdraw defendant's guilty plea, and defendant will remain bound to
6  fulfill all defendant's obligations under this agreement.  Defendant
7  understands that no one -- not the prosecutor, defendant's attorney,
8  or the Court -- can make a binding prediction or promise regarding
9  the sentence defendant will receive, except that it will be within
10  the statutory maximum.

11                    NO ADDITIONAL AGREEMENTS

12    26.  Defendant understands that, except as set forth herein,
13  there are no promises, understandings, or agreements between the USAO
14  and defendant or defendant's attorney, and that no additional
15  promise, understanding, or agreement may be entered into unless in a
16  writing signed by all parties or on the record in court.

17         PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

18    27.  The parties agree that this agreement will be considered
19  part of the record of defendant's guilty plea hearing as if the
20  entire agreement had been read into the record of the proceeding.

21

22  AGREED AND ACCEPTED

23  UNITED STATES ATTORNEY'S OFFICE
   FOR THE WESTERN DISTRICT OF TEXAS
24
   JOHN F. BASH
25  United States Attorney

26

27  ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾     ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
   SARAH WANNARKA                      Date
28

                            19

Assistant United States Attorney

KUNAL KALRA Defendant

Date  8/12/19

BRIAN E. KLEIN
ASHLEY E. MARTABANO

Date  8/2/19

Attorney for KUNAL KALRA

20

1                    CERTIFICATION OF DEFENDANT

2      I have read this agreement in its entirety. I have had enough

3 time to review and consider this agreement, and I have carefully and

4 thoroughly discussed every part of it with my attorney.  I understand

5 the terms of this agreement, and I voluntarily agree to those terms.

6 I have discussed the evidence with my attorney, and my attorney has

7 advised me of my rights, of possible pretrial motions that might be

8 filed, of possible defenses that might be asserted either prior to or

9 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10 of relevant Sentencing Guidelines provisions, and of the consequences

11 of entering into this agreement.  No promises, inducements, or

12 representations of any kind have been made to me other than those

13 contained in this agreement.  No one has threatened or forced me in

14 any way to enter into this agreement.  I am satisfied with the

15 representation of my attorney in this matter, and I am pleading

16 guilty because I am guilty of the charges and wish to take advantage

17 of the promises set forth in this agreement, and not for any other

18 reason.

19

20 KUNAL KALRA                     Date
   Defendant

21

22

23             CERTIFICATION OF DEFENDANT'S ATTORNEY

24      I am KUNAL KALRA's attorney.  I have carefully and thoroughly

25 discussed every part of this agreement with my client.  Further, I

26 have fully advised my client of his rights, of possible pretrial

27 motions that might be filed, of possible defenses that might be

28 asserted either prior to or at trial, of the sentencing factors set

1  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

2  provisions, and of the consequences of entering into this agreement.

3  To my knowledge: no promises, inducements, or representations of any

4  kind have been made to my client other than those contained in this

5  agreement; no one has threatened or forced my client in any way to

6  enter into this agreement; my client's decision to enter into this

7  agreement is an informed and voluntary one; and the factual basis set

8  forth in this agreement is sufficient to support my client's entry of

9  a guilty plea pursuant to this agreement.

10

11  BRIAN E. KLEIN
    ASHLEY E. MARTABANO
12  Attorney for KUNAL KALRA

    8/2/19
    Date

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | SA-17-CR-505-DAE |
| Plaintiff, | § | |
| VS. | § | **I N F O R M A T I O N** |
| | § | |
| | § | Ct. 1: 18 U.S.C. §1956(a) & (h) |
| KUNAL KALRA, | § | Conspiracy to Launder |
| | § | Monetary Instruments |
| Defendant. | § | |

**THE UNITED STATES ATTORNEY CHARGES:**

**COUNT ONE**
[18 U.S.C. §1956(a) & (h)]

From on or about September 2015 and continuing through and including the date of this indictment, in the Western District of Texas, the Southern District of Texas, and the Central District of California, Defendant,

**KUNAL KALRA,**

did knowingly combine, conspire, confederate, and agree with others known and unknown, to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, such property being, in fact, the proceeds of a specified unlawful activity, to wit: conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841 & 846, knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), all in violation of Title 18, United States Code, Section 1956(h).

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
*[See* Fed.R.Crim.P. 32.2]
### I.
### Money Laundering Violations and Forfeiture Statutes
**[Title 18 U.S.C. § 1956(a)(1)(B)(i) and (h), subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(1)]**

As a result of the foregoing criminal violations set forth in Count One, the United States of America gives notice to Defendant **KUNAL KALRA** of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 982(a)(1), which states:

> **Title 18 U.S.C. § 982.   Criminal forfeiture**
> (a)(1) The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957. . . of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

This Notice of Demand for Forfeiture includes, but is not limited to the following property:

### II.
### Money Judgment

**Money Judgment**: A sum of money equal to **Three Hundred Ninety-One Thousand Four Hundred Seven Dollars ($391,407.00)** which represents the value of any proceeds obtained directly or indirectly, and any property involved in, the violations of Count One, for which Defendant **KUNAL KUMAR KALRA** is liable.

### III.
### Substitute Assets

If any of the property described above as being subject to forfeiture for the violations set forth above, as a result of any act or omission of Defendant **KUNAL KALRA**:

a.   cannot be located upon the exercise of due diligence;
b.   has been transferred or sold to, or deposited with, a third party;
c.   has been placed beyond the jurisdiction of the court;
d.   has been substantially diminished in value; or
e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property, up to the

value of said money judgment, as substitute assets pursuant to Title 21 U.S.C § 853(p) and Fed.

R. Crim. P. 32.2(e)(1).

JOHN F. BASH
UNITED STATES ATTORNEY


BY: _____
SARAH WANNARKA
Assistant United States Attorney